IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

DENNIS FASON                                                                                         PETITIONER

v.                                          NO. 2:05CV00171 HDY

LINDA SANDERS, Warden, FCI                                                           RESPONDENT
Forrest City, Arkansas

## MEMORANDUM OPINION AND ORDER

BACKGROUND. Petitioner Dennis Fason ("Fason") represents that in December of 2004, he was sentenced to twenty-one months in the custody of the Federal Bureau of Prisons ("BOP") following his plea of guilty to wire fraud. He represents that at his sentencing, the district court judge "made a recommendation that [the] sentence be served in the federal boot camp program." See Document 1, Memorandum at 1. Fason eventually came to be incarcerated at FCI Forrest City in Forrest City, Arkansas.

Upon arriving at FCI Forrest City, Fason represents that the following occurred:

> Petitioner attended an [orientation] meeting where he was informed by his case manager that he would receive 6 months halfway house. Three weeks later, after being called to the office, Petitioner's case manager informed him that due to a recent change in the BOP's halfway house policy (which occurred after sentencing), he would not be getting the six months that he was previously promised. Also, at this same meeting, Petitioner's case manager informed him that the boot camp had been terminated and was not available.

See Document 1, Memorandum at 2. He represents that he then began an administrative challenge to the BOP's decision to delay his entry into a community corrections center ("CCC"). He represents that his administrative challenge bore no fruit.

FEDERAL COURT SUBMISSIONS. In July of 2005, Fason commenced the proceeding at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2241. He alleged in his petition that the BOP's decision to delay his entry into a CCC was premised upon an invalid policy. He additionally alleged that the BOP's decision to terminate the "Boot Camp" Program violated the "notice and comment requirements [of] the Administrative Procedures Act [and] violated the Ex Post Facto Clause of the United States Constitution." Given the foregoing, he sought the following relief:

> Petitioner requests this court to issue an order for Injunctive relief for the BOP to transfer this Petitioner to the Boot Camp Program or in the alternative to order the BOP to apply a longstanding policy statement that will afford the Petitioner similar relief that was offered by the Boot Camp Program. Also, Petitioner requests the court to order the BOP to consider this Petitioner for 6 months CCC placement without regards to the BOP's invalid rule of only considering prisoners for CCC for the last 10 percent of their sentence.

See Document 1 at 5.

Respondent Linda Sanders ("Sanders") thereafter filed an answer to Fason's petition. With respect to his challenge to the BOP's decision to delay his entry into a CCC, she first maintained that he improperly filed his petition pursuant to 28 U.S.C. 2241. She next maintained that he failed to state a claim for relief because he has no

constitutional right to a place of incarceration. She last maintained that he failed to state a claim for relief because the CCC placement policy adopted by the BOP is consistent with the relevant statutes and case law and is a permissible interpretation of 18 U.S.C. 3621(b) and 18 U.S.C. 3624(c).

With respect to Fason's challenge to the BOP's decision to terminate the "Boot Camp" Program, Sanders first maintained that the decision did not violate the Ex Post Facto Clause of the United States Constitution because no new law was applied, instead a decision was made to simply allocate limited funding to another program within an agency. She next maintained that because the decision of the BOP was nothing more than a re-allocation of funding within an agency, the decision is not reviewable under the Administrative Procedures Act ("APA"). She last maintained that the BOP's decision did not violate the APA because notice and comment were not required.

With respect to both claims, Sanders additionally maintained that Fason did not completely exhaust his administrative remedies. She specifically maintained that he failed to "completely exhaust his administrative remedies with respect to the CCC placement and did not even attempt to exhaust his administrative remedies with respect to the ["Boot Camp"] placement." See Document 4 at 31.

Fason subsequently filed a reply to Sanders' answer. In his submission, he again outlined the reasons why he believed he was entitled to relief. He joined that submission with the pending motion for expedited disposition. See Document 8.

PRELIMINARY MATTERS. Before addressing Fason's petition, the Court makes note of two preliminary matters. First, he is challenging the BOP's interpretation of 18 U.S.C. 3624(c) and, in turn, the decision of the BOP to delay his entry into a CCC. He is also challenging the BOP's decision to terminate the "Boot Camp" Program. The Court is convinced that his challenges involve challenges to the execution of his sentence. He has therefore properly filed his petition pursuant to 28 U.S.C. 2241.

Second, a prisoner is typically required to exhaust his administrative remedies before filing a petition pursuant to 28 U.S.C. 2241. See United States v. Chappel, 208 F.3d 1069 (8th Cir. 2000). The requirement is capable of being waived, though, when a prisoner can show that attempting to exhaust would be futile. The Court finds that requiring Fason to exhaust his administrative remedies would be futile; the BOP has taken a clear, consistent, and widespread stand against the positions advanced by Fason.

CHANGES TO THE BOP'S CCC PLACEMENT POLICY AND RESULTING LITIGATION. The proceeding at bar is better understood when placed in a larger context, a context that involves at least two changes to the BOP's CCC placement policy. Prior to December of 2002, the BOP had a policy of "allowing [a] prisoner[] to serve [the] last six months of incarceration in a CCC regardless of what percent of the sentence this six months comprised." See Elwood v. Jeter, 386 F.3d 842, 844 (8th Cir. 2004). This policy was particularly favorable to a prisoner with a relatively short sentence, like Fason, because the policy allowed the prisoner to serve a significant portion of his sentence in a CCC.

In December of 2002, the Department of Justice's Office of Legal Council ("OLC") issued a memorandum opinion that provided, in part, the following: "[w]hen [a prisoner] has received a sentence of imprisonment, the [BOP] does not have general authority ... to place such [prisoner] in community confinement at the outset of his sentence or to transfer him from prison to community confinement at any time [the] BOP chooses during the course of his sentence." See Cohn v. Federal Bureau of Prisons, 2004 WL 240570 at 1 (S.D.N.Y. 2004). "[The] OLC [therefore] concluded that [the] BOP could no longer place [a prisoner] in [a CCC] to satisfy a prison term, except that, pursuant to 18 U.S.C. § 3624(c), [the] BOP could do so at the end of [a prisoner's] sentence for the <u>lesser</u> of (i) the last ten percent of the sentence or (ii) six months." See Cato v. Menifee, 2003 WL 22725524 at 1 (S.D.N.Y. 2003). [Emphasis in original]. Shortly thereafter, the BOP announced that it would adhere to the OLC's memorandum opinion.

The United States Court of Appeals for the Eighth Circuit addressed the OLC's memorandum opinion and the BOP's application of it in Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004). The Court of Appeals determined that the OLC's memorandum opinion was erroneous and that the BOP has the discretion to place a prisoner in a CCC at any time during his incarceration. The Court of Appeals determined that the BOP is not limited by the provisions of 18 U.S.C. 3624(c); instead, that statute imposes a duty on the BOP to take steps to facilitate a prisoner's re-entry into the outside world. That duty, though, was not to extend beyond the last six months of the prisoner's sentence.

In response to <u>Elwood v. Jeter</u>, the BOP adopted a new CCC placement policy on February 14, 2005 ("the February 14, 2005, policy").  The relevant portions of the February 14, 2005, policy provided as follows:

> **570.20.  What is the purpose of this subpart?**
>
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
>
> **570.21.  When will the Bureau designate inmates to community confinement?**
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority …

The BOP thus acknowledged in the policy that it had the discretion to place a prisoner in a CCC prior to the last ten percent of the sentence being served.  The policy reflects, however, that the BOP would exercise its discretion, in advance, by limiting CCC confinement in every instance to the last ten percent of the sentence being served.

The February 14, 2005, policy spawned a significant amount of litigation across the country, much of which was within this district. In July of 2005, United States District Judge George Howard, Jr., had an opportunity to consider the policy in <u>Fults v. Sanders</u>, 2:05CV00091. He found that the policy was invalid because it was not the "categorical exercise of discretion" it purported to be. "It merely repackaged the December 2002 blanket rule that was rejected in <u>Elwood</u>." See <u>Fults v. Sanders</u>, 2:05CV00091, Document 6 at 8.

The undersigned has also had several opportunities to consider the February 14, 2005, policy. In every such instance, the undersigned has followed Judge Howard's lead and found the policy to be invalid. The undersigned will do likewise in the proceeding at bar.

<u>REMEDY FOR DELAYING ENTRY INTO A CCC</u>. The Court finds that the February 14, 2005, policy is invalid. With respect to the BOP's decision to delay Fason's entry into a CCC, his petition for writ of habeas corpus is granted. Sanders is ordered to: (1) consider, within twenty days and in good faith, transferring Fason to a CCC for the last six months of his sentence in accordance with the factors taken into account by the BOP prior to the adoption of the OLC's December of 2002 memorandum opinion; and (2) place Fason in conditions that will afford him a reasonable opportunity to adjust to, and prepare for, his re-entry into the community during a reasonable part of the last ten percent of his terms, to the extent practicable, not to exceed six months.

THE "BOOT CAMP" PROGRAM.  Fason additionally challenges the BOP's decision to terminate the "Boot Camp" Program, more formally known as the "Shock Incarceration Program" or "Intensive Confinement Program."  For the reasons that follow, the Court finds that the BOP's decision to terminate the Program was not improper.

The statute creating the "Boot Camp" Program, i.e., 18 U.S.C. 4046(a), was enacted as part of the Crime Control Act of 1990.  "[T]he program existed for several years without implementing regulations."  See United States v. McLean, 2005 WL 2371990 at 4 (D.Or. 2005).  In April of 1996, the BOP published its first interim rules regarding the Program.  The rules outlined the "scope of the program, [its] eligibility and placement factors, requirements for program success, and other institutional components."  See United States v. Serrato, 2005 WL 1661831 at 2.  "[S]uccessful completion of the program, which includ[ed] military-type basic training and other job and educational programs, could entitle an inmate to early release consideration."  See Barnes v. Lappin, 2005 WL 2456229 at 1 (M.D.Fla. 2005).  "Although Congress did not appropriate funds specifically for the ... program, the BOP [eventually] funded the ... program ... with lump-sum congressional appropriations designated for expenses necessary for the administration, operation, and maintenance of Federal penal and correctional institutions."  See United States v. Serrato, 2005 WL 1661831 at 1 (D.Or. 2005).  [Internal quotation omitted].

"In Fiscal Year 2004, the BOP experienced a shortfall of $150,000,000." See Id. at 2. The following then occurred:

> As a result of the budget shortfall and studies that led the BOP to conclude the boot-camp program was not effective in reducing recidivism, the BOP decided to phase out the boot-camp program. On January 14, 2005, BOP Director Harley Lappin issued a memorandum to all federal judges, chief probation officers, public defenders, and United States attorneys in which the BOP advised it was no longer offering the boot-camp program "effective immediately." Lappin noted inmates "currently enrolled in the program will be allowed to complete it…. However, no new classes … will be offered." Currently the BOP is not screening any inmates for the boot-camp program, and the last class of boot-camp is scheduled to end May 16, 2005.

See Id.

DECISIONS ADDRESSING THE TERMINATION OF THE "BOOT CAMP" PROGRAM. The propriety of the BOP's decision to terminate the "Boot Camp" Program has only been addressed in a few decisions, two of which are Castellini v. Lappin, 365 F.Supp.2d 197 (D.Mass. 2005), and United States v. McLean, supra. In Castellini v. Lappin, a prisoner sought preliminary relief in an attempt to prevent the BOP from terminating the Program. He maintained, in part, that the BOP's decision to terminate the Program "violated the notice-and-comment requirements for agency rulemaking under the APA … and violated the Ex Post Facto Clause …" See Castellini v. Lappin, 365 F.Supp.2d at 198. The district court judge in that case granted preliminary relief after determining that the BOP's decision failed to comply with the APA and violated the Ex Post Facto Clause. With respect to the APA violation, the district court judge found as follows:

> ... [T]he BOP established the program at issue here, which Congress enabled, through regulation subject to notice and comment. See 61 Fed.Reg. at 18,658 ("The Bureau is publishing this regulation as an interim rule in order to provide for public comment ...."). The APA requires notice and comment "when an agency adopts a 'new position inconsistent with any of the [agency's] existing regulations.'" [Citations omitted]. Where an agency's "interpretation [of a regulation] has the practical effect of altering the regulation, a formal amendment--almost certainly prospective and after notice and comment--is the proper course." [Citations omitted]. ("[A] rule is exempt from notice and comment as an interpretative rule if it does not 'effect a substantive change in the regulations.'") [Citation omitted].
>
> The BOP's abrupt termination of the boot camp program is inconsistent with, and effectively repudiates, the regulations by which the BOP established the program. [Citation omitted]. Plaintiff points out that on at least forty prior occasions when the BOP has made changes to the Shock Incarceration Program, it has followed the notice-and-comment provisions--even when the changes were largely ministerial. ...
>
> Moreover, the retroactive application of termination of the program to sentencing decisions made in reliance on the boot camp eligibility of a defendant underscores one key purpose of the notice requirement--ensuring fairness to the affected parties. [Citations omitted]. Despite the BOP's authority to reallocate boot camp resources, it cannot precipitously terminate the program without notice and comment. [Citation omitted]. Therefore, the termination of the boot camp program violates the APA and is invalid. [Citations omitted].

See Id. at 203. With respect to the Ex Post Facto violation, the district court judge found that the termination of the "Boot Camp" Program was "retroactive as to individuals who received a sentence with a boot camp recommendation before public notice of termination of the program on January 14, 2005." See Id. at 204.

In <u>United States v. McLean</u>, a prisoner filed a motion pursuant to 28 U.S.C. 2255 and challenged the BOP's decision to terminate the "Boot Camp" Program. He too maintained that the BOP's decision violated the notice and comment requirement of the APA and the <u>Ex Post Facto</u> Clause. The district court judge in that case refused to follow <u>Castellini v. Lappin</u> and instead found that the BOP's decision violated neither the APA nor the <u>Ex Post Facto</u> Clause. He specifically found the following:

> Here, the BOP has not issued new rules or regulations restricting participation in the Program or altering requirements for eligibility. [Citation omitted]. Rather, the BOP has issued a general statement of policy that it will no longer fund the Program and will reallocate those resources. Finally, contrary to the finding in <u>Castellini v. Lappin</u>, 365 F.Supp.2d 197, 203 (D.Mass.2005), the BOP did not establish and operate the Program pursuant to regulation. Rather, the Program existed for several years without implementing regulations. Therefore, I do not find that the BOP's termination of the Program is subject to notice and comment under the APA.
>
> [McLean] also argues that the termination of the Program is impermissibly retroactive if applied to him. However, [McLean] was not-- even provisionally-- accepted into the Program. See <u>Bowen v. Hood</u>, 202 F.3d 1211, 1218 (9th Cir.2000) (holding that a group of prisoners "cannot make the retroactive claim because its members had not received any form of acceptance into a substance abuse treatment program at the time the Bureau's interpretation was adopted").
>
> Similarly, [McLean] argues that termination of the Program violates the Ex Post Facto Clause by increasing the punishment that he would have otherwise received under the Program. [Citation omitted]. A law violates the Ex Post Facto Clause if it "worsens conditions imposed by its predecessor" by, for example, making early release or parole more difficult to obtain. [Citation omitted].

> However, the termination of the Program is an agency decision to discontinue funding for a program which, in the BOP's unfettered discretion, could lead to reductions in prison sentences. See Smith v. U.S. Parole Comm'n, 875 F.2d 1361, 1367 (9th Cir.1989) ("[T]he operative factor in assessing whether a directive constitutes a 'law' for ex post facto purposes is the discretion that the Parole Commission retains to modify that directive or to ignore it altogether as the circumstances may require."). Unlike the provisional good time credits and overcrowding gain time discussed in Weaver and Lynce v. Mathis, 519 U.S. 433, 444-45 (1997), the determination of whether a prisoner is eligible to participate in the Program is discretionary and "is to be made by Bureau staff in accordance with sound correctional judgment and the availability of Bureau resources." 28 C.F.R. § 524.30.
>
> In sum, I do not find that the BOP's termination of the Program exceeded its statutory authority or violated the Constitution or the APA.

See United States v. McLean, 2005 WL 2371990 at 4. Notwithstanding the foregoing, the district court judge found that McLean's sentence was imposed in violation of his right to due process. The district court judge specifically found the following:

> When imposing sentence, I relied on the fact that the ["Boot Camp"] Program was an available option and that [McLean] would be considered for participation in the Program. [Citation omitted]. However, this fact was not correct or reliable at the time of sentencing on December 16, 2004. Although the Program was not formally terminated until January 14, 2005, prisoners were not being considered for eligibility as of November 2004. … I relied [upon] an objectively unreliable fact that was material to my determination of sentence and demonstrably formed the basis of the sentence imposed. Therefore, [McLean's] sentence was imposed in violation of his right to due process.

Id. at 5.

ANALYSIS OF THE "BOOT CAMP" PROGRAM ISSUE.  The Court notes at the outset that Castellini v. Lappin has been criticized as lacking "precedential value" because the proceeding was dismissed after the granting of preliminary relief but before a final judgment was entered.[1]  Although the Court will not follow Castellini v. Lappin, the Court will not disregard it as lacking "precedential value."

The Court has considered the analysis in both Castellini v. Lappin and United States v. McLean.  The Court adopts the analysis of United States v. McLean and finds that the BOP's decision to terminate the "Boot Camp" Program was a general statement of policy that an agency will discontinue a discretionary allocation of unrestricted funds from a lump-sum appropriation.  As such, the decision was not subject to the notice and comment requirements of the APA.[2]  The Court also adopts the analysis of United States v. McLean and finds that there is no violation of the Ex Post Facto Clause because Fason was never provisionally accepted into the Program.  The Court therefore finds that the BOP's decision to terminate the Program violated neither the APA nor the United States Constitution.  With respect to that claim, his petition for writ of habeas corpus is denied.

---

[1] In Barnes v. Lappin, 2005 WL 2456229 at 2, United States District Judge William T. Hodges noted the following: "The Petitioner [i.e., Barnes] relies on Castellini v. Lappin ... a case from another district in which the sentencing court granted injunctive relief to a prisoner in connection with the termination of the Boot Camp program.  The court's docket in Castellini reflects that the case was dismissed, and accordingly it has no precedential value."

[2] "Under the APA, rules promulgated by administrative agencies must follow certain procedures unless they are 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.' 5 U.S.C. 553(b)(3)(A)."  See United States v. McLean, 2005 WL 2371990 at 3.

Notwithstanding the foregoing, the Court has some concern as to whether Fason's sentence was imposed in violation of his right to due process. It is possible that the district court judge who sentenced Fason relied on the fact that the "Boot Camp" Program was an available option and that Fason would be considered for participation in the Program. It was not, however, an available option, and Fason was never considered for participation in the Program because the BOP had ceased considering prisoners as of November of 2004, or one month before he was actually sentenced. The Court has no idea whether his participation in the Program was a material part of the district court judge's sentence. The answer to that question is for the district court judge who sentenced Fason, a question that can only be addressed by the sentencing judge in the context of a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. 2255.[3]

---

[3]

A prisoner may attack the execution of his sentence by means of a petition filed pursuant to 28 U.S.C. 2241in the district of his incarceration. See Matheny v. Morrison, 307 F.3d 709 (8th Cir. 2002); Bell v. United States, 48 F.3d 1042 (8th Cir. 1995). The Court understands "execution" to mean the manner in which a sentence is actually served. See United States v. Peterman, 249 F.3d 458 (6th Cir. 2001). For example, a petition filed pursuant to 28 U.S.C. 2241 is appropriate to challenge "calculations by the Bureau of Prisons of the credit to be given for other periods of detention, or decisions to deny parole, ... or conditions of confinement ..." See Poindexter v. Nash, 333 F.3d 372, 377 (2nd Cir. 2003).

A motion filed pursuant to 28 U.S.C. 2255 in the district of a prisoner's sentencing is the proper vehicle for challenging the validity of the prisoner's conviction and sentence. See Matheny v. Morrison, supra; Bell v. United States, supra. The Court understands "validity" to mean the imposition or length of the sentence imposed by the sentencing court. See Turner v. Keller, 994 F.Supp. 631 (W.D.Pa. 1998). 28 U.S.C. 2255 "encompasses claims that 'the sentence was imposed in violation of the Constitution or laws of the United States, ... that the court was without jurisdiction to impose such sentence, ... that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.'" See Love v. Menifee, 333 F.3d 69, 72 (2nd Cir. 2003) [citing Jiminian v. Nash, 245 F.3d 144, 146-47 (2nd Cir. 2001), and 28 U.S.C. 2255].

SUMMARY. With respect to Fason's first claim, i.e., the BOP's decision to delay his entry into a CCC was premised upon an invalid policy, the petition for writ of habeas corpus is granted. The February 14, 2005, policy is invalid. Sanders is ordered to: (1) consider, within twenty days and in good faith, transferring Fason to a CCC for the last six months of his sentence in accordance with the factors taken into account by the BOP prior to the adoption of the OLC's December of 2002 memorandum opinion; and (2) place Fason in conditions that will afford him a reasonable opportunity to adjust to, and prepare for, his re-entry into the community during a reasonable part of the last ten percent of his terms, to the extent practicable, not to exceed six months.

With respect to Fason's second claim, i.e., the BOP's decision to terminate the "Boot Camp" Program violated the APA and the United States Constitution, the petition for writ of habeas corpus is denied. The Court adopts the analysis articulated in United States v. McLean and finds that the BOP's decision to terminate the Program violated neither the APA nor the United States Constitution.

The Court does, however, have some concern as to whether Fason's sentence was imposed in violation of his right to due process. In the event he desires to pursue that issue, he should raise it with the sentencing judge in the context of a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. 2255.

Last, Fason's motions for expedited ruling and for partial summary judgment and order are denied. This proceeding has now been resolved.

IT IS ORDERED this ___3___ day of November, 2005.

_____
UNITED STATES MAGISTRATE JUDGE